Council may begin whenever they are ready. May it please the Court, David Capell of Gordon and Reese, on behalf of Travelers Property and Casualty Company of America. I'm joined today by Laura Geist, also of Gordon and Reese, and by Ray Sicaccio of Travelers Property and Casualty Company. We come today seeking reversal of the district court's order on cross motions for summary judgment. We are before you on a matter which the parties agree is on de novo review by this court. Specifically, we're seeking a reversal of the order, and the order was based on misunderstanding of the case law in California governing this dispute. The order allowed Tosco to settle a civil dispute by using as consideration the payment of other workers' compensation benefits, admittedly an uninsured settlement, but they were allowed to use this consideration. To understand this, we need to spend just a minute on workers' compensation. Generally, workers' compensation is the exclusive remedy is the employee against the employer under the workers' compensation system. Under extraordinary circumstances, like the one presented here, you are allowed to file civil actions. The allegations against Tosco that allowed the civil action arose out of a terrible fire at the Tosco Refinery in Martinez, California, that led to the death of one employee and the severe injury of another. Their allegations against Tosco and its conduct were extraordinarily bad, as was necessary to allow the civil action to proceed. There is no question that if the civil action had proceeded to verdict in favor of the plaintiffs, a credit would have been allowed in the workers' compensation proceeding in the amount of that verdict. Tosco, confronted with that problem, avoided the possibility of a verdict by settling. Critical to that settlement were two elements of consideration. Almost $6 million in cash. Admittedly, travelers did not pay that amount. That was paid by somebody else. And the other element of consideration was the waiver of the very credit that would have been allowed had the case gone to verdict and the verdict had been in favor of the plaintiffs. Travelers Yes, sir. But nothing in your policy expressly prohibited that, did it? Your Honor, you're absolutely right. In so many words. It did not specifically prohibit it. And the California Supreme Court has addressed just this kind of situation. The words in the policy regarding the assumption of obligations, regarding benefits regularly payable and things in excess of that, are broad terms broadly used. The California Supreme Court in Bay City's paving at 868 specifically said, a word with a broad meaning or multiple meanings may be used for that very reason, its breadth, to achieve a broad purpose. The same court, the California Supreme Court again in the same case, dealt with the issue of a question where the court of appeal had said you failed to define the term and therefore it was ambiguous. The California Supreme Court refuted that notion saying that if you had to define every term, you would then in turn have to define all the terms in the definition. And the result became so cumbersome as to create impenetrable ambiguity. And that's at page 866 in that decision. Maybe I have somewhat of a kind of a linear mind and have a relatively simple way of looking at things sometimes. It seems to me that the policy is pretty clear. It is clear. And maybe both counsel can address whether my reading makes sense. Nothing in the policy prohibits the kind of settlement that was made here. The only question is who pays. There's a provision that says don't make payments or assume obligations except at your own expense. So I don't see anything in the policy that prohibits such a settlement. But the settlement is at Tosco's expense if it exceeds, if it's voluntary. Your Honor, Travelers has not argued, does not argue here that the policy prohibits Tosco from entering into the settlement. That's not our point. They have the right to do that. And the cases addressing the voluntary payments provision, which is one of the two provisions we discussed, all involved a situation where an insured did something it had a right to do, settle a case. So is there anything wrong with the way I'm looking at it? Not at all. They had the right to do it. It's just a matter of who pays. That's correct. They have a right to do it. And by exercising that right, one of the consequences is that there's a breach of a contract. No. Where's the breach? The breach is they voluntarily assumed an obligation which they now refuse to pay. And instead Travelers is paying it. So it violates the condition in the policy. The other breach is with respect to the benefits regularly payable. That is, the regularly payable benefits would not include the benefits that are being paid now because they're within the amount of the credit. If the waiver had not been given, then no payments would be made until the workers' compensation benefits exceed $6 million, which has not yet happened. We don't anticipate it will. We think the number is going to stop at around $2 million. So that it was irregular for the waiver to be given. And critically in an Now you've lost me, I will say, because I don't see the breach. I don't see any breach. It seems to me a perfectly permissible thing to do under this condition. No, it is permissible. But that's the same as it was in Lowe v. Golden Eagle. It's the to settle the case. When it sought to have its insurer pay for that settlement, it was found to be in breach and unable to get reimbursement. In this situation, Travelers is living out the adage of no good deed goes unpunished because Travelers is continuing to make the payments. Unlike Lowe and Gribaldo, in those cases the insurer did not make the payments and was adjudicated to have been correct in doing so. Here Travelers is making the payments to assure that there's no irregularity there and simply is seeking reimbursement and an obligation on the part of Tosco to pay for the waiver that it used to settle the civil action. When you, I think it's important to look at the civil action. And if you look at Tosco's papers, their opposition brief at page 16, and as you do when you're preparing for argument, you find things that are helpful to you. And it's at the end of the first partial paragraph, the court, or excuse me, these are Tosco's words. Indeed, Tosco paid the civil settlement and Travelers did not because it was, quote, in excess of the benefits regularly provided by the workers' compensation law, close quote. Tosco acknowledges that the civil settlement was in excess of the benefits regularly provided. Travelers' point is the settlement has two components. It has the $6 million in cash and the waiver of the credit right that's out both of those components of consideration. So the civil settlement was one for cash and one for a promise of future payment. All right. Okay. I agree with you the way, what you say so far, but what in the policy well, what provision of the policy did Tosco breach by waiving the 3600 credit? It did not breach anything by the waiver. The difference, and this is important, the breach is in the failure to make the payments that resulted from the waiver. That's the breach. And the provision that it waived, there are twofold. But wait a minute. Failure to make the payments that resulted from the breach. From what breach? No, I'm sorry. Failure to make the payments that resulted from the waiver. From the waiver. All right. And those payments There are no payments that result from the waiver. I mean, the payments have to be made whether or not there is a waiver. That's incorrect, Your Honor. They did not have to be made regardless. They only had to be made because there was a waiver. If there had not been a waiver Oh, no. They only had to be paid because the injured employee filed a civil suit. If they never filed a suit, you'd still be making the payments, right? Right. But in this And there would have been no waiver. If there had never been a suit And so you still would have had to pay those payments, right? But that's not our situation, Your Honor. I know. Neither is the situation you're positing. The situation here is that there was a civil action and that the workers' compensation, the law governing workers' compensation, specifically provides for a credit where there is a civil action. Right. And so we're not dealing with a situation where none was ever filed. But it's within Tosco's power to waive that. Nothing in the policy prevented it from waiving that. You conceded that. Absolutely, Your Honor. But that's the same But the question is who pays? And then there's Part 4, Paragraph 6, Do not voluntarily make payments, assume obligations, or incur expenses except at your own cost. So that sounds like Tosco has to pay for this. Correct. But I guess we're, I'm not sure why there has to be a breach. And that's where I get hung up. It seems to me that the question is does the policy make them pay or make you pay? And I don't see where a breach comes into it. The breach, Your Honor, is they haven't paid. I see what you're saying. And so we're out, I apologize, we're out several million dollars today, and there's more out in the future. So we filed both a breach of contract and a declaratory relief claim, declaratory relief regarding the benefits out in the future, and breach of contract for the ones that we've had to pay, and they won't pay us back. So I hope that answers your question about where's the breach. Because we are out several million dollars, and I just got the updated figures from my client, and there's no question that we're definitely out that amount of money. Well, your footnote says it's probably going to be, what, two and a half million bucks or something like that? Right. The best current estimate is about two million dollars. It varies depending on how the final treatment of the injured person is resolved. It's important to understand that Travelers is not arguing that Tosco didn't have the right to settle. Tosco did have the right to settle. It may have been the best thing for Tosco to do when faced with a trial involving a refinery fire and injuries of this sort and allegations of this kind. I'm not here, Travelers is not here, to stand in judgment about that decision. Just like in Lowe v. Golden Eagle and Gribaldo, there was no question that the insured had the right to do it. Just very quickly, on Gribaldo, it's important to know that in that case, the court specifically acknowledged that the insurer knew about the settlement discussions, but the critical element in the provision that you, Your Honor, pointed out about voluntary payments, is that this settlement did not happen with Travelers' consent. So we've got both a breach and a declaratory relief cause of action that should be awarded in our favor, because Tosco, in settling a civil action regarding, which is definitely not insured by workers' compensation, used the consideration of the future stream of workers' compensation benefits. Travelers seeks reimbursement of that. Tosco hasn't done it. That's breach of contract. We seek declaratory relief. So there's an order saying Tosco has to do it out in the future. And then I'll reserve my other comments. Are you going to raise the ambiguity issue? Well, the ambiguity issue, I believe that the court below, and I know that this is a de novo review, the court below misunderstood the rules in California. If I want to ask you a question, you're going to argue that, huh? Right. With regard to ambiguity, the rules in California are you need to identify two different reasonable meanings, and then the rules apply to figure out which one of those two applies to the particular situation. The court's point below was that the provisions that we've identified were not explicit, did not identify the very labor code sections that we're addressing today. And I brought with me the compendium that I use in dealing with workers' compensation law. It's 1,600 pages long. Putting the relevant provisions from this in an insurance contract is not a meaningful way to have a meaningful insurance contract. To use the words of Bay City's paving, it would create impenetrable ambiguity to put this here. Instead, the law of the state of California under Swenson v. File, which we cited in our papers, is that these laws are incorporated into contracts at the time that they're made. In addition, the policy says that it conforms to the workers' compensation law. Difference of opinion with the district court on that. I know both sides have taken a position. The language in question, the two provisions, are not ambiguous. Assuming we found the district court was correct in alluding to ambiguity, the question is if McKinley's declaration, which is a substantial support for that, assuming there was an ambiguity, if McKinley's declaration expressed the opinion regarding the objectively reasonable expectation of an insurer under the circumstances in this case, does that opinion constitute an opinion of the meaning of a certain language in the policy? Yes, it does, and it's inadmissible for that reason. I'd like to refer the court to National Casualty v. Stewart, in which the court said at 458, 459, the opinion of a linguist or other expert as to the meaning of the policy is irrelevant to the court's task of interpreting the policy as read and understood by a reasonable layperson. And that is the only thing that he does. He says, I do not believe that Tosco or any other reasonable insured would understand this. And that's what his declaration is offered for, and it goes directly against holdings like National v. Stewart. You don't see a distinction between the expression of an opinion and an objectively reasonable expectation of an insurer under certain circumstances? I do not. Is it the same as expressing an opinion of the meaning of language in the policy? Both of those usurp your province, Your Honor. Is the reasonable expectation a tool for interpretation but not actually an interpretation? It is part of it, one of the tools for interpretation, but it is something that the reasonable layperson, Your Honors, you look at the language, you interpret the language as a reasonable layperson. You don't need, the lawyers might argue it, but you don't need an expert to say this is what these words mean. Sometimes it isn't necessary to have an expert advise, and try our facts. What is an objectively reasonable interpretation? No, there isn't. Not interpretation, reasonable expectation. No, but there may be a reason for usage in trade, or a technical meaning given to a word in an aerospace contract or something like that. But the parties aren't arguing those things. We're arguing about just what do these words mean without any specific technical interpretation. But does it, in the end, make any difference because there's de novo review? And we all agree, you know, interpretation of the policy is a question of law. You're absolutely right that you should disregard the McKinley Declaration because you are performing the de novo review. I understand that. So it doesn't make any difference, does it? You should ignore the McKinley Declaration because you will make that determination. But could that declaration not be helpful in court determining the meaning? No, because all he's saying is, Your Honors, here's what I think these words ought to mean. Can we consult that in the same way we consult the dictionary? No, it's a different purpose. And that's why national versus steward is quite specific. You don't get an expert to stand up and say, These are what these words mean. They're legal conclusions. Yes. That's what you're saying, right? Yes. I mean, he's not offering a course of conduct, and I'm over time and I apologize. He's not offering a course of conduct. He's not offering anything that's technical to the specific field. He's just saying, Here's what this would mean to a reasonable insurer. This is what a turbine engine is, and that's what turbine engines are. Right. Or the meaning of shot. If you're involved in a contract with a bar, it's different than if you're involved in a contract with a gun shop. You know, one is shotgun pellets and one is something that one might have late in the day. They're different. We hope only late in the day. Exactly, Your Honor. But that's context. That's not why he's offered here today. Okay. Thank you. Thank you, Your Honor. We'll hear from Mr. Day. Good morning, Your Honors. James Day of Latham & Watkins on behalf of ConocoPhillips Company, the appellee, and the successor in interest to Tosco Corporation, which was the insurer under this policy. I'd like to start with this notion that there were two pieces of consideration in the settlement. That's not accurate. There was a payment made in consideration for settling civil claims, and there was an agreement. You expect us to believe that the waiver of that 3600 credit was not part of your consideration? Well, Your Honor, that's right. That's almost like, you know, it doesn't make sense. Well, Your Honor, for one piece of support, Your Honor, I would point to… Why didn't you put it in there? Well, there was going to be no settlement on these terms for this amount of money unless Tosco agreed not to use that settlement amount that it paid as an offset in the workers' compensation. All right, so isn't that part of the consideration? In a technical sense, I think it is. I'll agree with you. Not in the sense of giving someone something in exchange, giving something, paying money. We're not using travelers' money to settle this case. And there is one point of evidence I'd like to direct you to. Why does it matter who's… I'm sorry. Go ahead and finish that, and then I'll ask. Let me quickly direct you to AR 32, which is the settlement agreement. There's the language saying Tosco agrees not to seek an offset. Immediately below, the next paragraph says, Plaintiff understands and agrees that the consideration for the release and discharge set forth above consists of the promise of payments and related provisions as to annuity funding and ownership set forth herein below. And below, there is the payment provision that sets out all the money that Tosco is going to pay to these folks. Okay. Now, the settlement was voluntarily entered into, correct? In a certain sense. By your predecessor in interest. In a certain sense. Obviously, Tosco did not do this even if he wanted to, but it wasn't coerced by travelers, certainly. It wasn't coerced by anybody holding a gun to your head. It was done as a proof of business judgment, and it was voluntary, right? In that sense. Okay. And the requirement that Tosco not seek the workers' compensation offset was a contractual obligation under the settlement, correct? It's a contractual term. Is it a requirement? It's a requirement, yes. Okay. Then why doesn't this sentence clearly cover it under Part 4, your duties if injury occurs? Your duties are listed here. Do not voluntarily make payments, assume obligations, or incur expenses except at your own cost. We have to consider that language in the context of this insurance policy. What that provision means is if you get a claim that's covered by this policy, don't go out and voluntarily make payments, don't go to the claimant and assume their obligations to make payments, and don't incur expenses on their behalf, and then come back to us and expect us to pay. It's much broader than that. Well, what I'm suggesting is that's the meaning, that's the way the provision would apply. I know you're suggesting that, but that's not what it says. Well, your position seems to be that this clause applies only to claims that are covered or potentially covered by the policy. Isn't that sort of what you're saying? When it says, you know, do not voluntarily make payments? Right, well, I think the... Only with respect to claims that could be covered under the policy. But the obligations here apply to claims that are covered by the policy. Right. The other provision... And one of the obligations was to refrain from seeking the offset under workers' comp, so it's a workers' comp-related obligation that was assumed in the settlement. Well, I disagree with the use of obligation. I think here... Why? Assume obligation in this context is agree to pay on behalf of. That's the way that this provision reads to me, and it's the way the case law uses it. If you look at the low case that both parties cite, the insured goes out and settles a lawsuit without talking to the insurer, and then turns around and says, okay, pay me this money. So what we're talking about is making expenditures agreeing to assume obligations. I would say assume financial obligations. Okay, but what you're, again, you're talking about a covered claim, a claim that's covered under the policy. Right. Well, there's neither... There's no case law cited here that would cover application of this provision under these facts. They all apply to covered claims. There's nothing in the policy that suggests if you're dealing with some other not uninsured claims that this particular language applies. Your position is because the claim you were dealing with was not insured by this policy. That's right. The policy, including this provision, doesn't apply to that claim at all. Isn't that what you're saying? That's right. The policy does not... I mean, any more than this would apply to say, you know, a customer at a Tosco station, you know, had a slip and fall accident. That's right, Your Honor. This policy, as it's written, does not purport to control how Tosco can settle this separate... Non-covered claims. Uninsured, non-covered claims. And, in fact, counsel for travelers suggested that the problem here is the settlement occurred without travelers' consent. There's certainly no requirement in the policy... But this is sort of a... But this is... So, if I back up a little bit, this is sort of like a hybrid claim, isn't it? I mean, the claim by this employee, you know, outside of the workers' compensation system. In other words, you know, in civil court, it still arises out of the course and scope of employment. Well, it does arise out of the same course and scope, but these are entirely separate claims. One gives rise to statutory rights for benefits, having your medical costs paid, and the other claims are separate. But there's at least... You have to grant him at least this much relationship between the claims. That's the reason... That's the very reason why 3600 is in the workers' comp code, right? Because the claims are related. The claims are related, Your Honor. And that's why... It's not an entirely separate claim. Well, I disagree with that. I mean, the basis is it arises from the same accident, certainly. The claims are separate. They are excluded. Not only that, it covers the same injury. I don't know that that's precisely the case because there are claims made in the civil case that are not necessarily available under the workers' comp. They're broader. They're broader. And so the injury is not necessarily identical. Were they seeking punitive damages in the civil claim for intentional fraud? I believe so, Your Honor. Let me ask you a question based on the policy part one, paragraph F, payments you must make. You are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law, including those required because of various things like willful conduct. If we make any payments in excess of the benefits regularly provided by the workers' compensation law on your behalf, you will reimburse us promptly. What is your understanding of benefits regularly provided? That's the X dollars on the schedule, right? Right. It's the money that's actually provided to these injured employees. No, no, no. Within the context of the workers' compensation proceeding. That's right. The regularly proceeded would be those awarded based on a claim for workers' compensation. It would exclude a serious and willful petition, which did exist here. And it would exclude these civil claims that also exist here. Tosco paid to settle the civil claims, paid millions of dollars to settle, and it paid to settle the serious and willful claims. Although that's a payment made to the worker. Both of those resulted in Tosco making payments to the worker beyond what's regularly required by the workers' compensation law. That's the piece that Travelers is paying because Tosco paid it to provide that insurance. I don't understand that. So there were three proceedings. In essence, one for regular workers' compensation benefits. That's if someone is hurt, they file a claim, and they begin to recover workers' compensation benefits. Those benefits are still being incurred by at least one of the workers. There was a second petition for enhancement of those benefits under the serious and willful statute. That's not pursuant to the section you just cited, Your Honor. That is not covered by this policy. Tosco paid to settle that. It did not look to Travelers to settle that. And again, there's the civil case we've been talking about, which is undisputedly not covered by the policy at issue here. Tosco paid to settle that. So the only thing that Travelers is paying are the workers' compensation benefits under this policy that Tosco bought from Travelers to cover these precise benefits. It hasn't paid a dollar more than it would have. When you say you bought it, though, when you bought it, part of your premiums were based upon the $3,600 credit, right? Well, there's no – I disagree with that, Your Honor. In fact, there's nothing in the record to suggest that – Well, you wouldn't disagree with me if you were an underwriter. But let me ask you a little different question. Well, there's no evidence that the underwriter's considered – Well, considering that evidence, was this covered by other insurance? Which? The civil case? Yes. I assume it was, right? Yes. Now, I'm just curious. Did somebody, like, render an opinion about this $3,600, you know, waiver? Yes, Your Honor. What happened is Travelers learned of the settlement within a few days of its announcement to the court and the waiver of this credit. About six or seven months later, Travelers went to the Workers' Comp Appeals Board, the administrative court, and said, we want to exercise our credit under Section 3600. And the Appeals Board said, no, that credit was waived, so it's not available for you. About – Because it was voluntarily waived by you. Because it was – yeah, because it was waived. There was no credit. No credit arose because in the settlement that would be used for the credit – In the regular course of the Workers' Compensation statute, that credit would have been available. Without any special arrangement or special circumstance or waiver, that credit would have been available, right? Well, we don't know, Your Honor, because the settlement would have not occurred. Well, sure you know, because, you know, you see in these, like, especially third-party cases, you see these, you know, these liens being, you know, filed all the time. Workers' Comp carriers, right? So you know it's always there. Well, the statute – Maybe that's the problem. Everybody assumes it's going to be there. Certainly the statute exists. And whatever rights were available would have been there. But this settlement would not have occurred. If the settlement does not occur, there is no credit under 3600. Until they get a judgment against you. If they got a judgment, granted, Your Honor. If there had been a judgment, if it had been under one of the particular section, causes of action identified in either 3602B or 455, the 3600B credit only applies to certain causes of action. And there was at least one cause of action pending that is not covered. So had the judgment been only on that particular cause of action, there would have been no credit. Now, all right. Your time is running out. I want you to answer this question now. You heard the way Mr. Capel analyzed this case in terms of where and how the obligation arose, right? Under his theory, for Tosco to have to, you know, cover this amount, right? Yes. What's wrong with that theory? The problem with the theory is it ignores the clear and explicit language of the policy, which does not say, and it's admitted by everyone, it never says, if you waive a credit that would otherwise reduce the benefits, then you have to pay the difference. But it says it in two other ways that cover that. For that concept, one has to do with regular benefits under the workers' comp laws, and one has to do with assuming obligations voluntarily that are unilaterally done. But it never explicitly mentions waiver of a credit, Your Honor. It never explicitly mentions, you know, car accidents or cranes falling or anything else, but that's a situation that becomes covered. This is kind of a curious case because, as I understand it, I mean, you both took the position that the policy was not ambiguous, or neither of you, you know, asserted it was ambiguous, and yet you both read it differently, right? That's right, Your Honor. And that's why we submitted evidence to resolve that ambiguity if the Court found one. Our position is, and I think this has been admitted, that the policy does not explicitly prohibit Tosco from waiving a credit. Of course not. The question is who pays. You can do it. Who pays? And it doesn't explicitly say that if you do something that fails to reduce the amount of benefits, we have to pay. Sure, if you assume the obligation. But that provision, the way that that works is assume an obligation to pay something. The obligation already existed. Travelers had to pay that money, the benefits, the day before the settlement. So you're saying that the waiver of the $3,600 credit is not the same as assuming an obligation. I think that's right, Your Honor. I see it as two different things. I think assuming an obligation is agreeing to assume the obligation of another, and I don't believe that's what happened here. What happened here is Tosco said, okay, fine, if this is the only way to settle, we will take the civil settlement and handle it here entirely separately from the workers' comp benefits. And you can continue to receive those, and all we are dealing with are these civil claims. But doesn't the argument today by both sides suggest there isn't ambiguity in the language? Well, I think that perhaps, Your Honor, they would both have to be reasonable interpretations, and I disagree that Travelers has offered a reasonable interpretation. It's also the plaintiff in this case. I'm sorry. I think it would have the burden of showing that. However, if we get to the ambiguity analysis, I have to agree completely with Your Honor that I believe what you were saying is the expert testimony we submitted is a tool for resolving that ambiguity. Why isn't that just an expression of a legal conclusion? Isn't that what we're supposed to do? Because I don't think that it's not offered to say this is what the language means. The testimony is offered to say that an objectively reasonable insured would not expect the obligations that Travelers is now trying to say exist. So it's the expectation. It's evidence of expectation of an objectively reasonable insured. So this type of testimony is admissible under Cooper. It's not excluded under the cases cited by Travelers where there is an ambiguity. It becomes useful. It's a useful tool to use to resolve the ambiguity. Judge Yelston looked at that evidence. She also considered the fact that although this credit had been on the books since 1982, Travelers had never included any clear notice to put the insured on notice, that it could not waive this credit, and she considered that evidence. But it could. Nobody's saying it couldn't. It's just a matter of who pays. But it doesn't say if you waive the credit, you'll pay. You're reading the language broadly, which is the approach Travelers takes to that. I think that's inappropriate for another reason, and that is under the McKinnon case that we cite. You read coverage language broadly to provide the maximum amount of coverage. But if you're going to exclude coverage, you have to read that more narrowly, and the exclusion has to be stated conspicuously, clearly, unmistakably. Certainly we don't have that here, Your Honor. Do you think this is an appropriate or a suitable question to certify the California Supreme Court? I don't think it's that controversial, Your Honor. Our position is if you look at the clear and explicit language, there is an absence of the restriction that Travelers would like to impose. A different question. Do you think it's an appropriate case to send to mediation? Again, Your Honor, I think that Judge Ilston, in a well-reasoned opinion, got the right result here. I take it that's a no? That is a no. Does the record in any way reflect who drafted the policy? Your Honor, the record before Judge Ilston did have testimony. I believe, however, that in a perhaps overzealous effort to par down the record, it did not make it into the record before the court. You mean it's not in the excerpts? I believe it is not in the excerpts. That doesn't matter. We have the whole record available to us. I apologize, Your Honor. It's not in front of us, but is it in the record before the district court? There was testimony by the 30B6 witness representing Travelers that this was their regular form policy and that it had not been amended in this particular case. Just a minute. That's a Travelers 30B6 witness? Correct. All right. Thank you. Thank you, counsel. Thank you. We've used more than everybody's time, but I think we used more of his, so you can have a minute for rebuttal if you want it. I appreciate it very much. I want to respond to a couple of questions that came up during the course of Tosca's argument. The question came up specifically about covered and uncovered, and there's no question that the waiver, the settlement of the civil action, involved two pieces of consideration, none of that covered by workers' compensation. I want to draw your attention to the Lowe case. There are a couple of quotes in there that are helpful to the resolution. First, in talking about the no voluntary payments provision, which is one of the ones we've been talking about, the court in Lowe said in 1544, in short, the provision protects against coverage by fait accompli. This is sort of what Tosca wants to do to travelers in this instance. They settle a case and impose the obligation. Secondly, in dealing with whether or not the settlement was voluntary, the court was doing it specifically in the context of the insurer's argument that there was, there were no covered damages at all. So that's important to bear in mind. Thirdly, you should also note that the insured, and this is at 1545, 1546, the insured incurred no monetary costs in achieving the settlement. They were unwinding a real estate deal that had gone bad. But the insured incurred no monetary costs. Similarly, Tosca was trying to impose on travelers the obligation to pay when it incurred no monetary costs for giving the waiver. Basically, let's have travelers pay instead of Tosca. Secondly, it's important to remember when thinking about how to consider the policy that what we're talking about here are not exclusions. We're talking about conditions to the policy, the rules of construction dealing with exclusions and construing them narrowly. Yeah, but it doesn't have to do with coverage. This language doesn't have to do with, you know, scope of coverage, right? It's a condition to the policy. It's the rule. What my point was, Tosca argued that it was an exclusion. And my point is that it is not an exclusion. There are conditions to coverage. I believe your time is up, but you can wrap up. Finally, thank you for your additional time. And I would just say that this is what I would call an efficient breach by Tosca, perhaps in its best interest to settle the case at the expense of travelers. Thank you, Your Honors. Thank you, Counsel. The case just argued is submitted, and we appreciate the arguments of both sides. As I mentioned, we'll take about a five-minute recess. We'll come back looking like civilians and talk to the students and anyone else who's interested. Thank you.
judges: Tashima, Graber, Timlin